IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

BRANDON JORDAN,            )
                           )
         Plaintiff,        )
                           )   Case No. 12-CV-655-JED-PJC
v.                         )
                           )
ANIXTER, INC., d/b/a ANIXTER )
FASTENERS,                 )
                           )
         Defendant.        )

**OPINION AND ORDER**

**I.  Background**

Plaintiff, Brandon Jordan, asserts two claims relating to the defendant's termination of his employment. According to the allegations of plaintiff's Petition, Mr. Jordan is an African American male who worked for defendant, Anixter, Inc. (Anixter), from September 2010 to September 2012 as a forklift operator. Jordan was injured in an on the job accident. As a result of the injury, Jordan was drug tested, and his employment was then terminated. Jordan alleges that Caucasian co-workers were not required to submit to drug testing after on the job accidents, while African American workers were required to submit to such testing following accidents. Thus, Jordan asserts that he was treated differently and less favorably than Caucasian employees, on the basis of his race. He asserts a Title VII disparate treatment claim and a claim for intentional infliction of emotional distress. Anixter seeks dismissal under Fed. R. Civ. P. 12(b)(6), asserting that the Petition fails to state a claim upon which relief can be granted.

**II.  Dismissal Standards**

In considering a Rule 12(b)(6) dismissal motion, a court must determine whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The

Rules require "a short and plain statement of the claim to show that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, the standard does "not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555-56, 570 (citations omitted). "Asking for plausible grounds ... does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]. A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id*. at 556. A court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to the claimant. *Id.* at 555; *Alvarado v. KOB–TV, L.L.C*., 493 F.3d 1210, 1215 (10th Cir. 2007).

## III. Discussion

### A. Title VII Claim

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff proves a Title VII violation "either by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 ... (1973)." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cor. 2012). Under the burden-shifting framework, a plaintiff must first establish a

prima facie case of discrimination, then the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action. If the defendant meets that burden, then the burden shifts back to the plaintiff to show that the plaintiff's protected status was a determinative factor in the employment decision or that the employer's explanation is pretext. *Id.* To set forth a prima facie case of employment discrimination, the plaintiff must establish that he (1) is a member of a protected class, (2) suffered an adverse employment action, (3) was qualified for the position at issue, and (4) was treated less favorably than others not in the protected class. *Id.*

The plaintiff is not required to establish a prima facie case in the complaint in order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Khalik*, 671 F.3d at 1192. However, analyzing the allegations of the complaint in light of the elements of each alleged cause of action "help[s] to determine whether [the plaintiff] has set forth a plausible claim." *Id.*

Jordan's pleading contains sufficient factual allegations to state a plausible claim for employment discrimination under Title VII. In short, he alleges that he is an African American (Doc. 2-1 at ¶ 10), which satisfies the first element of a prima facie case. He alleges that his employment was terminated (*id.* at ¶ 15), which constitutes an adverse employment action and thus satisfies the second element. He asserts that he "was qualified to perform his job and earned a satisfactory work record during his employment" with Anixter (*id.* at ¶ 11), which satisfies the third element. He alleges that he was "treated disparately from his Caucasian coworkers with regard to drug testing and discipline" and, specifically, that his "Caucasian co-workers were not required to submit to drug testing after being involved in on the job accidents," while African American workers were required to submit to such testing following accidents. (*Id.* at ¶¶ 12, 16, 17). Plaintiff accordingly alleges that he was treated differently and less favorably than

3

Caucasian employees on the basis of his race. (*Id.* at ¶ 18). Taken as true, the allegations of paragraphs 12, 16, 17, and 18 satisfy the fourth element.

Notwithstanding the allegations in the plaintiff's pleading, Anixter argues that Mr. Jordan "has not [shown] and cannot show that he is qualified for his position as a forklift operator given the drug test at the time of his termination." (Doc. 12 at 4) (emphasis omitted). In support, Anixter cites a number of unpublished decisions for the proposition that an employee who fails a drug test is not qualified for his position. (*See id.* at 4-5). However, those cases were decided at the summary judgment stage upon an evidentiary record, rather than at the pleading stage, and the cases appear to be decided on their distinct facts rather than determining, as a matter of law, that an employee may not state a claim where he was fired based upon a drug test. For example, in the first case cited by Anixter, *Sims v. ArcelorMittal*, No. 2:08-CV-0309, 2010 WL 2076915 (N.D. Ind. May 21, 2010), the court granted the defendant's motion for summary judgment where the plaintiff had not responded. In determining that summary judgment was appropriate, the court noted that the defendant had presented undisputed evidence that the defendant "applied its pre-employment drug testing policy consistently and uniformly regardless of race," such that plaintiff could not establish his prima facie case of employment discrimination. *Id.* at *4. Like Anixter, the defendant in *Sims* also argued that the plaintiff was unqualified for the position because of the failed drug test and that was the reason for the adverse decision with respect to employment. *Id.* at *5. The court determined that issue, not at the pleading stage, but at the summary judgment stage based upon *undisputed evidence* regarding the consistent application of its drug testing policy with respect to job applicants. *Id.* The issue was decided because plaintiff had not established that the reason offered for the employment decision was pretextual. *See id.*

4

The cases cited by the defendant do not announce a rule that, as a matter of law, a failed drug test renders an employee disqualified for a position. Rather, the courts in those cases analyze the specific factual record presented. This case is at the pleading stage and, as noted, Jordan is not required to provide any proof or evidence establishing his prima facie case or proving pretext. That is for a later stage of the proceedings.

Anixter also asserts that Jordan's factual allegations do not establish that Anixter treated him less favorably than other employees outside his protected class. Because plaintiff was drug tested following an accident that caused an injury, Anixter argues that he must establish that Caucasian employees *who were injured* following an accident (rather than being involved in a non-injury accident) were not drug tested. While the Court agrees that plaintiff will ultimately have to prove that similarly-situated Caucasian employees were treated more favorably, the Court is not inclined at the pleading stage to dismiss Jordan's discrimination claim based upon his failure to identify *identically*-situated Caucasian employees who were treated more favorably as to drug testing and discipline. In his pleading, plaintiff alleges that his Caucasian co-workers were not required to submit to drug testing after on the job accidents, while he and his African American workers were required to submit to such testing following accidents. He asserts that he was treated differently as to drug testing and discipline, because of his race. At this stage, those allegations are sufficient.

As Jordan has provided allegations sufficient to set forth a plausible claim under Title VII, Anixter's motion to dismiss the Title VII claim is denied.

B. **Intentional Infliction of Emotional Distress**

Based upon the same facts supporting his Title VII claim, Jordan asserts a claim for intentional infliction of emotional distress under Oklahoma law. Such a claim is governed by the

5

narrow standards set forth in the Restatement Second of Torts, § 46. *Gaylord Entertainment Co. v. Thompson,* 958 P.2d 128, 149 (Okla.1998). In *Breeden v. League Servs. Corp.,* 575 P.2d 1374 (Okla.1978), the Oklahoma Supreme Court explained:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

*Id.* at 1376 (quoting Restatement (Second) § 46, cmt. d).

To state a claim, the plaintiff must allege that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *See Schovanec v. Archdiocese of Oklahoma City,* 188 P.3d 158, 175 (Okla.2008) (quoting *Computer Publications, Inc. v. Welton,* 49 P.3d 732, 735 (Okla.2002)). The trial court must assume a "gatekeeper role" and make an initial determination that the alleged conduct "may be reasonably regarded as sufficiently extreme and outrageous" to maintain a claim for intentional infliction of emotional distress. *Trentadue v. United States,* 397 F.3d 840, 856 n.7 (10th Cir. 2005); *see also Gaylord*, 958 P.2d at 149.

Jordan asserts that his allegations of employment discrimination, disparate treatment in drug testing, and termination are sufficient to state a plausible claim for intentional infliction of emotional distress. The Court disagrees. The Petition does not set forth any facts that would rise to the level of outrageousness required to set forth an emotional distress claim under Oklahoma law, because the conduct alleged is not "so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized

6

community." *See Breeden*, 575 P.2d at 1376. Moreover, Oklahoma courts have routinely held that Title VII and other employment-related claims do not rise to the level of outrageous conduct necessary to support a claim of intentional infliction of emotional distress. *Daniels v. C.L. Frates & Co.*, 641 F. Supp. 2d 1214, 1218 (W.D. Okla. 2009); *see also Miner v. Mid-America Door Co.*, 68 P.3d 212 (Okla. Civ. App. 2003) (claim of intentional infliction of emotional distress was not established despite allegations of sexually explicit verbal abuse and physically threatening conduct by a supervisor); *Eddy v. Brown*, 715 P.2d 74 (Okla. 1986) (allegations of ridicule by supervisor and foreman did not amount to sufficiently outrageous conduct); *Anderson v. Oklahoma Temp. Servs., Inc.*, 925 P.2d 574 (Okla Civ. App. 1996) (six events including lewd remarks about the plaintiff by her supervisor and embarrassing her by discussing her faults with coworkers were insufficiently outrageous); *Mirzaie v. Smith Cogeneration, Inc.*, 962 P.2d 678 (Okla. Civ. App. 1998) (allegations that employer made derogatory sexual comments about the plaintiff's fiancée, refused to allow plaintiff a day off of work to be with his wife and newborn son in the hospital, and called plaintiff in the middle of the night, browbeating the plaintiff for hours and requiring him to do unnecessary work, were not sufficiently outrageous to maintain a claim for intentional infliction of emotional distress).

Jordan's intentional infliction of emotional distress claim will be dismissed, for failure to state a claim, and he will not be given leave to file an amended complaint reasserting this claim. Jordan's allegations that defendant treated him differently than Caucasian coworkers by administering a drug test to him after he was involved in a workplace accident and then terminated his employment based upon the drug test do not constitute extreme and outrageous conduct. Jordan has not suggested that the alleged discrimination in this case is similar to any case in which an Oklahoma court has found extreme and outrageous conduct in the workplace

setting. He has not stated a plausible claim of intentional infliction of emotional distress, and the Court has been provided no basis to infer that plaintiff has any additional factual allegations that would state such a plausible claim if given leave to amend that claim.

IT IS THEREFORE ORDERED that Anixter's Motion to Dismiss (Doc. 12) is **granted in part and denied in part**. In accordance with Fed. R. Civ. P. 12(a)(4), defendant shall file an Answer within 14 days of the filing of this Opinion and Order. The parties shall file a Joint Status Report on or before **October 17, 2014**.

SO ORDERED this 15th day of September, 2014.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE